## AMERICAN SAMOA GOVERNMENT, Plaintiff

### v.

## MELISE SEFO, Defendant

High Court of American Samoa
Trial Division

CR No. 5-92

May 5, 1992

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MAILO, Associate Judge.

Counsel: For Plaintiff, Donald M. Sheehan, Assistant Attorney General
For Defendant, Barry I. Rose, Assistant Public Defender

On Motion to Suppress:

The defendant is charged with two counts of murder. She moves to suppress the government's use of certain incriminating statements which she had previously made on the ground that she was illegally in custody when these statements were given. Defendant argues

that she was arrested without a warrant in violation of Revised Constitution of American Samoa Art. I, Section 5, and A.S.C.A. § 46.0801 and that, therefore, her statements are inadmissible.[1]

At the hearing, the government had all but conceded the issue of valid arrest; the court was given very little detail on the surrounding circumstances leading up to the defendant's custodial situation. Officer Vaitoelau Laumoli testified that in the early hours of one particular morning he had accompanied Inspector Mika Kelemete to the village of Malaeloa and arrested the defendant; he acknowledged that they did not have a warrant at the time. When asked why they had gone to Malaeloa, Officer Laumoli could only generally say that their office had been seeking out the person who had perpetrated the trouble before the court and that they had gone to Malaeloa because of information which their office had received. He further testified that after arriving at Malaeloa, he heard Inspector Kelemete verbally warn the defendant of her rights and inform her that she was under the custody of their office. He noted that while the defendant was crying and visibly distraught, she also submitted to them quietly.

Officer Terry Letuli, who had also gone to Malaeloa, testified that he was told by Inspector Kelemete that the defendant turned herself in to the "authorities"; he believed the defendant had turned herself in to the Commissioner of Public Safety. Officer Letuli also testified that he overheard a Mrs. Tua Togiola state that certain Tongan members of the victims' family were out looking for the defendant; hence, he noted in the booking form that the defendant was being held for her safety.

---

[1]Revised Constitution of American Samoa Art. I, § 5 reads in pertinent part:

> The right of the people to be secure in their persons . . . against unreasonable . . . searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation . . . . *Evidence obtained in violation of this section shall not be admitted in any court.*

(emphasis added).

A.S.C.A. § 46.0801 reads, "Except as provided in 46.0805 and 46.806, *no arrest may be made except upon a warrant*, duly issued in accordance with the provisions of this chapter." (emphasis added).

While it did not escape our attention that the testimony elicited from Officer Letuli was, in effect, an attempt to allude to that statutory exception sanctioning warrantless arrest in the situation where protective custody is called for, *see* A.S.C.A. § 46.0805(7), the government simply failed to show that the defendant indeed required protection. Moreover, if the defendant had in fact attempted to turn herself in--the antithesis of restraint--the government again failed to supply details. Inspector Kelemete, the arresting and ranking officer at the scene of the arrest, was not called to elaborate on the factors leading up to the arrest--which Officer Laumoli could not. Accordingly, the court was not supplied an evidentiary basis upon which "reasonableness," the substantive element of Article I, § 5, might be assessed.

On the extent of the testimony before us, we must conclude that the defendant was "seized" in the constitutional sense, and that her arrest was not only "unreasonable" but not in accordance with applicable procedural requirements. Rev. Const. Am. Samoa Art. I, § 5; A.S.C.A. § 46.0801.

The evidence, however, did show that later on at the police station that same morning, Officer Meauta Mageo, Jr. was very meticulous with the manner in which he walked the defendant through the *Miranda* warning process before he asked her whether she wished to say anything. He was clearly very consciously attempting to avoid the possibility of any subsequent claims of coercion and overbearance on his part. The ensuing dialogue between the defendant and Officer Mageo culminated in the statements now sought to be suppressed. Under these circumstances, the government submits that even if the arrest were illegal, the defendant's confession should nonetheless be admissible because it was a product of free will--it was voluntary.[2] The contention is that since the confession was voluntarily given, it was not obtained by exploiting the illegal and arrest and hence not obtained in violation of Article I, § 5.

---

[2] A confession by one illegally in custody must be suppressed unless the causal connection between the arrest and the confession had become so attenuated that the latter should not be deemed "tainted" by the former. *Wong Sun v. United States*, 371 U.S. 471 (1963). In *Wong Sun*, the Supreme Court held that a confession made by an accused after his unlawful arrest was not excludable when it was shown that the confession was the result of "an intervening . . . act of free will." *Id.* at 486.

34

The Supreme Court, in *Dunaway v. New York*, 442 U.S. 200, 217-18 (1979), stated that voluntariness, while it is the key issue for Fifth Amendment analysis, is merely a threshold issue for Fourth Amendment analysis. "Beyond this threshold requirement, *Brown [v. Illinois*, 422 U.S. 590 (1975)] articulated a test designed to vindicate the 'distinct policies and interests of the Fourth Amendment' . . . [by identifying] the relevant inquiry as 'whether [an accused's] statements were obtained by exploitation of the illegality of his arrest.'" *Dunaway*, 442 U.S. at 218 (internal citation omitted) (quoting *Brown*, 422 U.S. at 600). Both *Brown* and *Dunaway* focus on the "causal connection between the illegality and the confession," as a reflection of the two policies behind the use of the exclusionary rule as a means of effectuating the Fourth Amendment--namely, deterring future police misconduct and bolstering judicial integrity by encouraging obedience to legal rules. *Brown*, 422 U.S. at 603; *Dunaway*, 442 U.S. at 218. The *Brown* test highlights four factors: whether *Miranda* warnings were given, "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct."[3] *Brown*, 422 U.S. at 603-04. Further, the Court in *Brown* clearly rejected the notion that *Miranda* warnings *alone* were sufficient to purge the taint of an illegal arrest. *Id.* at 602-03. This was re-emphasized in *Dunaway*, 442 U.S. at 217-18.

The government argues that *Miranda* warnings were given and that the police in the present case were acting in good-faith reliance on a statutory provision (that permits protective custody) so the necessary causal connection does not exist between the arrest and the confession because it was not flagrant misconduct.

In American Samoa, however, these factors must be read in light of a constitutional exclusionary rule. This provides that "[e]vidence obtained in violation of [Article I, § 5] shall not be admitted in any court." Rev. Const. Am. Samoa Art. I, § 5. The time differential and especially any intervening circumstances may indeed be applicable in American Samoa as serving to sever the relationship between the illegal arrest and the confession; if there is no relationship between the two, the confession would not be a product of the illegal arrest and would not be obtained in violation of Article I, § 5. The last factor, however, while important in *Brown* and *Dunaway*, seems largely to serve the goal of

---

[3] The test also explicitly states that the burden of proving admissibility rests on the prosecution.

deterring future police misconduct, not of proving that the confession was not a product of the illegal arrest. This is not a permissible reason to abrogate the protection of the constitutional exclusionary rule and, therefore, the culpability of the police is not a factor in the American Samoa scheme.

The government also argues that the case of *Rawlings v. Kentucky*, 448 U.S. 109 (1980), supports the admissibility of the confession in the present case. The Court in *Rawlings* applied the *Brown* test to a statement given during a detention that occurred in a home while waiting for a search warrant, after officers lawfully in the home smelled marijuana. After the warrant arrived, an occupant of the house was ordered to dump the contents of her purse onto a table; substantial amounts of controlled substances were thus exposed, and the defendant made incriminating statements by claiming some of the drugs. The *Rawlings* Court noted that *Miranda* warnings were given just prior to the incriminating statement; that the arrest and confession were not temporally close because of the congenial, not-strictly custodial atmosphere in the house during the 45-minute detention (defendant and companions were joking with police and offered them refreshments); that there was an intervening circumstance--the discovery of the drugs--which led to a spontaneous reaction "of free will unaffected by the initial illegality," *Rawlings*, 448 U.S. at 109-10 (quoting *Brown*, 442 U.S. at 603); and that the officers committed no conscious or flagrant misconduct. *Id.* at 108-11. The Court therefore held that the statements were free of any taint from any illegality in the initial detention.[4]

However, *Rawlings* seems to differ from the present case in two key details. First, the atmosphere was different; the time element is roughly the same, but police in the present case were actually questioning the defendant, and the events occurred at the police station, not in a home. In the *Rawlings* case, the 45 minutes of the detention--the temporal severing period--were spent quietly waiting for the search warrant. While the presence of this defendant's friends and family at the police station is certainly a relevant factor under *Brown*, the custodial circumstances here were a lot less casual than those found in *Rawlings*. Second, we find no intervening circumstance to evoke a spontaneous response in this case; instead, the police were questioning the defendant.

---

[4] The Court remained undecided whether the initial detention was legal or not.

Additionally, as discussed above, police misconduct, or lack thereof, is, we believe, not a relevant consideration.

The mere giving of *Miranda* warnings is not sufficient to sever the causal relationship between an illegal arrest and a subsequent confession; it alone cannot constitute an "intervening circumstance." Neither of the two other applicable factors appear to sever the relationship of the illegal arrest and the confession. The confession occurred within an hour or so of arrest, and no other circumstances intervened. We conclude that the confession must be suppressed.

It is so ordered.